**In the**
**UNITED STATES DISTRICT COURT**
**for the SOUTHERN DISTRICT OF INDIANA,**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| L. B., a minor, by and through his parents and legal guardians, Lee Benjamin and Kelly Benjamin, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| *vs.* | ) | **CAUSE NO. 4:05-cv-206-SEB-WGH** |
| | ) | |
| GREATER CLARK COUNTY SCHOOLS and CLARK COUNTY SPECIAL EDUCATION COOPERATIVE, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**E N T R Y and O R D E R**
**on Plaintiffs' Motion for Statutory Injunction (doc. no. 14)**

This cause is an action under the Individuals with Disabilities Education Act, 20 U.S.C. §

1400, *et seq.*, ("IDEA" or "Act"), that seeks judicial review of a decision of the Indiana Board of

Special Education Appeals ("Board") on the proper educational placement for L. B., a minor

child.  L. B. is a nearly-thirteen-year-old boy diagnosed with cerebral palsy[1] with a left

hemiparesis[2] and mild psychomotor delay which affects language formulation, word retrieval,

and left-sided motor skills.  Dissatisfied with the education that he was receiving from his local

Indiana public school district, L. B.'s parents unilaterally withdrew him from public school,

---

[1] "A congenital form of impairment of neurologic and muscular function caused by a faulty development of certain parts of the brain (which are concerned with movement) or by birth injuries to the brain."  1 J. E. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder*, p. C-163 (Dec. 2005).

[2] Hemiparesis is "[a] slight paralysis or weakness affecting the muscles on one side or half of the body."  3 *Attorneys' Dictionary of Medicine*, p. H-68.

1

placed him in a private school in Kentucky, and initiated the administrative processes under the Act to challenge the state's provision of services to L. B.  Before the Court is a request for preliminary relief:  L. B. has moved for an injunction ordering the defendants to continue paying for his tuition, transportation, and related expenses at and to the private school in Kentucky, and certain program expenses, during the pendency of this litigation.  For the reasons set forth below, the Court grants the plaintiffs' motion.

The IDEA aims "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living" and that "the rights of children with disabilities and parents of such children are protected . . . ."  20 U.S.C. § 1400(d)(1)(A) and (B).  While recognizing that states and localities are responsible for providing education to disabled students, Congress determined that it was in the national interest that the federal government also have a role to play in ensuring the proper education of students with disabilities by assisting states financially in providing this education and providing uniform standards and procedures.  20 U.S.C. § 1400(c)(6) and (d)(1)(c).  To that end, the Act makes grants available to state educational agencies to fund special education programs.  20 U.S.C. § 1411.  But the grants are not open-ended:  to be eligible, a state must demonstrate that it has adopted specific policies and procedures spelled out in the Act, 20 U.S.C. § 1412, and funded programs are required to comply with various substantive and procedural criteria (20 U.S.C. §§ 1414 and 1415).  Indiana has legislatively accepted the provisions of the IDEA, Ind. Code Ann. ("IC") § 20-19-2-16 (Lexis/Nexis 2005), and has implemented its substantive and procedural requirements through legislation, Ind. Code Ann. § 20-35-1-1 *et seq.*,

2

and administrative rules, 511 Ind. Admin. Code ("IAC") 7-1, *et seq.* (2003).

To be eligible for grants, a state must comply with several substantive conditions.  In part, it must make available a free and appropriate education to all children with disabilities, 20 U.S.C. § 1412(a)(1); it must provide that education in the least restrictive environment, meaning in regular classrooms, unless, due to the nature or severity of the child's disability, such placement would be unsatisfactory, 20 U.S.C. § 1412(a)(5); it must identify and evaluate all children in need of special education, 20 U.S.C. § 1412(a)(3) and (7), and § 1414(a) – (b); and it must develop, implement, and periodically review and revise an individualized education program for each child with a disability, 20 U.S.C. §§ 1412(a)(4) and 1414(d).  Special education services shall be provided to a child with disabilities, at no cost to his parents, who is placed in or referred to a private school by the state or local educational authority as a means to provide the child a free and appropriate education.  20 U.S.C. § 1412(a)(10)(B).  Educational authorities are not required to pay for a child's education in a private school if the authority made a free and appropriate education available to the child in a public school.  20 U.S.C. § 1412(a)(10)(C)(i).  If the parents of a child with disability enroll the child in a private school without the responsible public agency's consent, a hearing officer or court may require the authority to reimburse the cost of the enrollment if it finds that the responsible public agency had not made a free and appropriate education available to the child before the private enrollment. 20 U.S.C. § 1412(a)(10)(C)(ii).

The Act also requires that recipient states comply with several "procedural safeguards" to ensure parental notice of and involvement in the development and implementation of special

educational plans for their children.  See generally, 20 U.S.C. §§ 1412(a)(6) and 1415.  The Act also provides a formal process for parents or the responsible educational agency to seek administrative and judicial review of "any matter relating to the identification, evaluation, or educational placement of a child, or the provision of a free appropriate public education to such child" in a funded special-education program.  20 U.S.C. § 1415(b)(6).  This process consists of, first, the presentation of a complaint, 20 U.S.C. § 1415(b)(6); second, an impartial due process hearing before an independent hearing officer that is conducted by either the state or the local educational agency as determined by state law or the state agency, 20 U.S.C. § 1415(f)(1)(A) and (f)(3); third, depending on the nature of the particular state's due-process hearing structure, an appeal to the state education authority, 20 U.S.C. § 1415(g)(1); and, finally, a civil action for judicial review and determination, 20 U.S.C. § 1415(i).  A reviewing court shall receive the administrative record, shall hear additional evidence on request of any party, and, based on a preponderance of the evidence, shall grant such relief as it determines is appropriate.  20 U.S.C. § 1415(i)(2)(c).[3]

Indiana has implemented these procedural safeguards by administrative rule.  Any individual, group of individuals, agency, or organization may file a complaint alleging a violation of federal or state laws applying to special education programs.  511 IAC 7-30-2. Indiana additionally requires its division of special education to investigate complaints and order corrective action.  511 IAC 7-30-2(c) - (j).  A parent, public agency,[4] or the state educational

---

[3] Previously codified at 20 U.S.C. § 1415(i)(2)(B).

[4] A "public agency" is defined as "any public or private entity that has direct or delegated authority to provide special education and related services . . . ."  511 IAC 7-17-60.  It includes

4

agency[5] may initiate a due process hearing whenever a dispute arises concerning the provision of special education to a student.  511 IAC 7-30-3.  Any party to a due-process hearing may appeal the hearing officer's decision to the Board of Special Education Appeals ("BSEA") which applies a deferential standard of review:  the BSEA determines only whether the decision is arbitrary or capricious, an abuse of discretion, unsupported by substantial evidence, or contrary to law or established procedure.  511 IAC 7-30-4.  Dissatisfied parties may file a civil action for judicial review of the BSEA's decision.  511 IAC 7-30-4(n) and (o).

The IDEA requires recipient states to comply with a "stay put" requirement during the pendency of administrative and judicial review processes:

> Except as provided in subsection (k)(4) of this section [pertaining to changes in a child's placement for disciplinary reasons], during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).  See also 34 C.F.R. § 300.514(a) (same provision).[6]  The United States Department of Education has defined, by regulation, one circumstance that constitutes an

---

public school corporations operating individual or cooperative programs.  *Id.*  See, also, the statutory definition at IC § 20-35-7-4 (same definition).

[5] "'State educational agency' means the [Indiana] department of education."  511 IAC 7-17-67.  The regulations also provide that "[t]he department of education, division of special education is the state educational agency responsible for the general supervision of all special education programs, as specified in IC 20-1-6."  511 IAC 7-18-1(c).

[6] "Except as provided in § 300.526, during the pendency of any administrative or judicial proceeding regarding a complaint under § 300.507, unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement."  34 C.F.R. § 300.514(a).

agreement for an exception to the child's stay-put placement:

> If the decision of a hearing officer in a due process hearing conducted by the [state educational authority] or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State or local agency and the parents for purposes of paragraph [300.514](a) of this section.

34 C.F.R. § 300.514(c).  Thus, even if parents unilaterally change their child's operative educational placement after commencing an administrative review, the stay-put requirement will preserve that change for the remainder of the proceedings if state review officials decide in favor of the parents.  *See also*, *School Committee of the Town of Burlington, Massachusetts v. Department of Education of the Commonwealth of Massachusetts*, 471 U.S. 359, 372, 105 S.Ct. 1996, 2004-05, 471 L.Ed.2d 359 (1985).  By administrative rule, the Indiana Department of Education has implemented this requirement:

> Except as provided in 511 IAC 7-29-3 and 511 IAC 7-29-7 [both relating to disciplinary changes of placement], the student shall remain in the student's current educational placement during a due process hearing, administrative appeal, or judicial proceeding, unless the parties agree otherwise.

511 IAC 7-30-3(j).  Similarly, Indiana has also carved out one circumstance constituting an agreed exception to the stay-put requirement:

> If, as a result of the due process hearing, the independent hearing officer's decision concurs with the parents' contention that a change of placement is appropriate, the placement ordered by the independent hearing officer shall be treated as a placement agreed upon by the parent and the public agency.

511 IAC 7-30-3(v).

Plaintiff L. B. was a resident of the Greater Clark County Schools district ("Clark County") during the relevant time periods in this case and was enrolled in its Jonathon Jennings Elementary School for five years.  Clark County identified L. B. as having a learning disability

and communication disorder and crafted annual individualized education programs for him. During L. B.'s fifth-grade year, 2004-2005, his parents disputed the appropriateness of his education and notified the school in a letter dated March 28, 2005 that they would be withdrawing L. B. from the school and enrolling him in Summit Academy, a private school in Middletown, Kentucky.  By a letter dated April 4, 2005 to the Indiana Department of Education, L. B.'s parents requested a due process hearing pursuant to the IDEA.[7]  The letter was received by the Department on that same day and an independent hearing officer ("IHO") was also

---

[7] Apparently, L. B.'s parents did not submit a complaint before requesting a due-process hearing.  At that time, the IDEA required recipient agencies to establish and maintain procedures allowing children with disabilities and their parents "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6) (2005) (since amended).  By rule, state educational agencies are required to adopt written procedures for receiving, investigating, and resolving such complaints.  34 C.F.R. §§ 300.660 – 300.662.

Indiana has promulgated a complaint resolution process whereby its Division of Special Education receives and investigates complaints and may order binding corrective action.  511 IAC 7-30-2.  However, there is a question whether the state's complaint process is open to substantive disputes about a child's education.  See 511 IAC 7-17-15 (defining a "complaint" as "a written, signed allegation of a *procedural* violation of federal or state statutes, regulations, rules, or constructions governing special education . . . ." (emphasis added)).

At the time L. B.'s parents requested a due process hearing, the IDEA provided that "[w]henever a complaint has been received under subsection (b)(6) or (k) of this section, the parents involved in such complaint shall have an opportunity for an impartial due process hearing . . . ."  20 U.S.C. § 1415(f)(1).  This language has been interpreted as requiring the filing of a complaint as a precondition to receiving a due-process hearing.  *Virginia Office of Protection and Advocacy v. Virginia Dept. of Education*, 262 F.Supp.2d 648, 653 (E.D. Va. 2003).  *See Kaseman v. District of Columbia*, 444 F.3d 637, 638-69 (D. C. Cir. 2006); *Lillbask* ex rel. *Mauclaire v. State of Connecticut Dept. of Education*, 397 F.3d 77, 82 (2nd Cir. 2005); *Ullmo* ex rel. *Ullmo v. Gilmour Academy*, 273 F.3d 671, 679 (6th Cir. 2001); *Maldonao v. Benitez*, 874 F.Supp. 491, 496 (D. P. R. 1995).  The prerequisite to a complaint has been made more explicit and formal in the 2004 amendments to the IDEA.  20 U.S.C. § 1415(f)(1)(B)(i), (ii), and (f)(3)(B).

appointed that day.  L. B.'s last day of attendance at the defendants' school was Friday, April 8,

2005 and he completed his fifth-grade year at Summit Academy, where he remains currently

enrolled.  Hearings were held on June 2, 3, 7, 22 and August 17 and 18, 2005.  The IHO issued

her decision on August 31, 2005.

The IHO found in favor of the parents, concluding, in part, that "[t]he IEP's [*sic*]

developed by the school for student's fourth and fifth grade years were not reasonably calculated

to enable the child to receive educational benefit," Due Process Hearing Decision, p. 9 (attached

as Exhibit A to the Complaint); the IEPs were not properly implemented, *id.*; "while not

regressing, the student was making very minimal progress given his projected learning

potential," *id.*, p. 10; and, she concluded, overall "the school failed to provide the student with a

Free Appropriate Public Education and the private placement is appropriate", *id.*, p. 13.  She

ordered, in part, that L. B. be placed at the Summit Academy at public expense for the 2005-

2006 academic year with the school paying for all tuition and mandatory fees, *id.*; that the school

pay for L. B.'s transportation to and from the Summit Academy and that this requirement be

included in his IEP, *id.*, p. 14; and that the school provide or pay for communication disorder

programming for L. B., *id.*.  The IHO concluded, however, that, because L. B.'s parents failed to

give the required ten-days notice of intent to enroll L. B. in a private school, that the cost of L.

B.'s completion of the 2004-2005 school year at the Summit Academy be borne by the parents

and not the school.  *Id.*, p. 13 and 14.

On October 3, 2005, the school appealed the IHO's decision to the Indiana Board of

Special Education Appeals ("BSEA"), the second step in Indiana's two-tiered due-process

hearing procedure.  511 IAC 7-30-4.  On November 29, 2005, the BSEA issued its decision reversing the IHO's decision, finding that the school provided L. B. a free appropriate public education and that his 2005-2006 IEP was appropriate.  Combined Findings of Fact and Conclusions of Law, With Orders (attached as Exhibit B to the Complaint).  Specifically, the Board reversed all of the IHO's orders described above but affirmed her conclusion and order that the cost of the remainder of L. B.'s spring 2005 enrollment at the Summit Academy be borne by the parents for failure to give adequate notice before withdrawing L. B. from the school.  However, the BSEA continued the IHO's orders until thirty calendar days after both parties received its decision, after which the school would have no further responsibility for L. B.'s enrollment at Summit Academy.

On December 30, 2005, L. B.'s parents filed this action seeking judicial review of the findings and decisions of the BSEA.  In a letter dated February 2, 2006, counsel for the defendants informed L. B.'s parents of the defendants' position that "[b]y operation of law, the BSEA's Decision establishes that Summit Academy is no longer [L. B.'s] 'stay-put' placement for the duration of the parent's appeal of the Decision to the United States District Court Southern District of Indiana.  Or at the very least, the BSEA Decision establishes that the School is no longer financially responsible for [L. B.'s] tuition if the parents continue his enrollment at the Summit Academy."  Exhibit attached to Plaintiffs' Motion for Statutory Injunction (doc. no. 14) ("Plaintiffs' Motion").  On February 13, 2006, plaintiffs filed the present motion seeking an injunction directing the defendants "to honor the pendent placement at Summit Academy as ordered by the IHO, pay for tuition and related expenses at Summit Academy; provide and/or pay for the transportation of L.B. to and from Summit Academy; provide and/or pay for the

communication disorder programming ordered by the IHO; and for any and all other just and proper relief."  (Plaintiffs' Motion, p. 4).  Although it has not been specifically alleged or suggested, the Court assumes that the defendants have ceased providing reimbursement and/or transportation for L. B.'s enrollment at Summit Academy and their letter did not convey anything beyond their stated position.  In their response, the defendants assert that L. B. and his parents moved from the defendant Greater Clark County Schools district to the West Clark Community Schools district in August 2005.  (Defendants' Memorandum in Opposition to Plaintiffs' Motion for Statutory Injunction (doc. no. 20) ("Response"), p. 2 and Exhibit A).  Defendant Clark County Special Education Cooperative also services the West Clark schools.  (*Id.*).

Plaintiffs contend that, once the IHO decided in their favor, Summit Academy became L. B.'s current educational placement which must be maintained pending final completion of judicial review, despite the BSEA's subsequent reversal.  They argue that the IHO's decision constitutes the agreement of the state or local education agency that is provided in the IDEA and federal and state regulations.  Defendants respond that a reviewing court is required to give "due weight" to the final decision in an IDEA administrative proceeding and that, in a two-tiered administrative review system such as Indiana's, it is only the second-tier BSEA decision, not the first-tier IHO decision, that can ratify a parent's unilateral change of educational placement after commencing review proceedings.

## Analysis

There is little doubt that L. B.'s parents violated the IDEA's stay-put requirement when

10

they unilaterally moved L. B. from the defendants' school to Summit Academy after initiating administrative review proceedings.  Plaintiffs, however, concede that they do not seek a ruling or order relating to the period between their removal of L. B. from the school and the date of the IHO's decision in their favor; rather, they seek relief only for the period from the IHO's decision to the present.

The IDEA mandates that states adopt a two-tiered administrative review process if the required due-process hearings are conducted by local educational agencies; in that case, aggrieved parties must be allowed the opportunity to appeal to the state educational agency as the second tier of review.  20 U.S.C. § 1415(g).  As referenced above, the IDEA allows for a change in a child's then-current educational placement during the pendency of review proceedings if either the state or the local educational agency agrees to the change.  20 U.S.C. § 1415(j).  In its 1985 *Burlington* decision, the Supreme Court gave a broad interpretation to this provision of the Act when it held that a state hearing officer's decision in favor of parents who unilaterally changed their child's placement during administrative proceedings "would seem to constitute agreement by the State to the change of placement."  *Burlington*, 105 U.S. at 372, 105 S.Ct. at 2004.  However, the administrative process in *Burlington* was a one-tier system, with the state conducting the due-process hearing.  In 1999, the U. S. Department of Education promulgated 34 C.F.R. § 300.514 which repeats the Act's statutory stay-put requirement and defines one specific circumstance where a parent and state or local agency agreement will be recognized:  "[i]f the decision of a hearing officer in a due process hearing conducted by the [state educational agency] or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an

11

agreement between the State or local agency and the parents" for purposes of the stay-put requirement.  34 C.F.R. § 300.514(c).  Defendants are correct that a locally-conducted first-tier decision in favor of parents would not qualify as an agreement to a child's unilateral change in placement under the terms of this rule.  Such recognition is mandated only for state-conducted first-tier due-process hearings or decisions by state review officials on second-tier appeal.

**Due weight and deference.**  Defendants first argue that courts are required to give "due weight" to the results of administrative proceedings and, where there are different results from different levels of administrative review, the courts should defer to the final decision of the review.  They contend, therefore, that this court should give due weight and defer to the decision of the BSEA that the defendants are not required to provide further support for L. B.'s enrollment at Summit Academy beyond thirty days after the decision.  The due weight and administrative-deference standard, however, is applied to the substantive issues involved in the IDEA review.  The present issue involves, not the substance of the provision of special education services to L. B., but rather the determination of his current educational placement.  The facts that are determinative of that question are not in dispute and require only an application of law, which does not require extending deference or "due weight" to the BSEA decision below, which, at any rate, did not address the issue of the stay-put requirement.

**First-tier decision.**  Defendants contend that, because the IHO decision in favor of L. B.'s parents was only a first-tier decision which was subsequently reversed by the second-tier BSEA, 34 C.F.R. § 300.514(c) forbids treatment of the IHO decision as being an agreement to L. B.'s changed placement.  Their rationale is not that the due-process hearing was conducted by

12

the local, not the state, educational agency, but that it was not the *final* administrative decision. Defendants interpret the determining principle of § 300.514(c) to be whether the administrative decision is final rather than whether the decision was made by the state or the local educational agency. Thus, they contend, even in a state-run two-tier system, § 300.514(g) mandates that it is only the final, second-tier decision that may be deemed an agreement to change a child's then-current educational placement. This interpretation stretches the rule too far.

It does not violate the IDEA for a state to adopt a two-tiered administrative-review process, both tiers of which are conducted by the state educational agency. *Murphy v. Arlington Central School District Board of Education*, 86 F.Supp. 2d 354, 365 (S.D. N.Y. 2000), *affirmed*, 297 F.3d 195 (2nd Cir. 2002); *T. H. v. Board of Education of Palatine Community Consol. School Dist. 15*, 55 F.Supp.2d 830, 845 (N.D. Ill. 1999), *affirmed* 207 F.3d 931 (7th Cir. 2000), *cert. denied*, 531 U.S. 824, 121 S.Ct. 70, 148 L.Ed.2d 34 (U.S. 2000); *Township High School Dist. No. 211 Cook County, Illinois v. Ms. V.*, Cause nos. 93-C-7492 and 94-C-30, 1995 WL 103667, *3 (N.D. Ill., March 03, 1995). The texts of  20 U.S.C. § 1415(g) and 34 C.F.R. § 300.514(a) only mandate adoption of a two-tiered administrative process when the required due-process hearing is conducted by a local rather than a state educational agency; they do not explicitly or by implication prohibit a two-tiered process where both tiers are conducted by the state.  Indiana's statutes and administrative rules are not explicit as to whether its initial IHO due-process hearings are conducted by the state or the local agency.  In addition, not only are there no established or developed standards for determining whether a state or local entity is "conducting" a due-process hearing, there is scant mention in the case law regarding the issue at all.

In Indiana, a parent's request for a due-process hearing must be sent simultaneously to the state's Division of Special Education and the local school,[8] 511 IAC 7-30-3(c)(5); the state Superintendent of Public Instruction appoints the IHO, 511 IAC 7-30-3(e); the state is responsible for ensuring that the pool of IHOs is comprised of persons who are knowledgeable, trained, qualified, and conflict-free, 511 IAC 7-30-3(g); the state's Division of Special Education maintain a list of eligible IHOs and their qualifications, 511 IAC 7-30-3(h); due-process hearings are conducted pursuant to Indiana's administrative adjudications statute, 511 IAC 7-30-3(p); and the Division of Special Education maintains the records of hearings, 511 IAC 7-30-3(y).  In contrast, the rule requires local schools to bear all costs of due-process hearings, including transcription and hearing-officer fees and expenses, 511 IAC 7-30-3(q), and the local school is required to inform parents of the availability of mediation, 511 IAC 7-30-3(f), all of the costs of which, however, are borne by the state's Division of Special Education, 511 IAC 7-30-1(c).  If the decisive factor in determining whether a hearing is conducted by the state or the local agency is which entity selects the IHO, *see Murphy*, 86 F.Supp.2d at 364, then, in Indiana, the state conducts Indiana's first-tier due-process hearings.  If the decisive factor is which entity pays the costs of the hearings, *see Larson* ex rel. *Larson v. International Falls Public Schools*, No. Civ.02-3611 DWF/RLE, 2002 WL 31108199, *5 (D. Minn., Sept. 18, 2002), then it appears that local schools in Indiana conduct the first-tier due-process hearings.

---

[8] Literally, the rule requires simultaneous notice to the "public agency,"defined as the "entity that has direct or delegated authority to provide special education and related services, including . . . Public school corporations operating programs individually or cooperatively."  511 IAC 7-17-60.  In the purposes of this decision, "local school" will be used to include both of the defendant public agencies.

14

No single factor is to be viewed as determinative, however; thus, consideration of all factors is deemed the best approach.  The balance of all factors in Indiana's system weighs in favor of a finding that the state conducts both tiers of the IDEA administrative review process, including the first-tier due-process hearings.  The state sets the rules and procedures for the hearings, ensures the qualifications and competence of the pool of IHOs, and selects the IHOs — all factors that directly influence the substance and quality of the hearings results.  The state also maintains the records of administrative proceedings.  While the local schools pay the costs and fees of due-process hearings, this factor carries less weight because the expenditures of those costs and fees are mandated and controlled by the substantive and procedural rules established and enforced by the state and have little impact on the substantive decisions that IHOs make.

The official comments accompanying the promulgation of § 300.514(c) record that the Department of Education intended this rule to incorporate the "long standing judicial interpretation of the Act's pendency provision," as expressed in *Burlington*; *Susquenita School District v. Raelee S.*, 96 F.3d 78 (3rd Cir. 1996); and *Clovis Unified School District v. Office of Administrative Hearings*, 908 F.2d 635 (9th Cir. 1990).  64 Fed. Reg. 12, 615 (March 12, 1999).  Both *Burlington* and *Clovis* involved one-tier administrative reviews conducted by the state educational agency and, while *Susquenita* involved a two-tier system, the second-tier decision was the first one that found in favor of the parents; the court specifically declined to address whether a first-tier decision would qualify as an agreement under § 300.514(c).  None of these decision, therefore, involved a first-tier *versus* second-tier issue.  *Susquenita*, 96 F.3d at 85 n. 8.  Neither *Burlington*, *Clovis*, nor *Susquenita* — the declared rationale for § 300.154(c) — expresses or mentions administrative finality, or even a distinction between state and local

15

control, as principles of their decisions, neither do they declare a second-tier-only rule.  These decisions declare only that a decision resulting from the IDEA administrative-review process can constitute an agreement between a state or local agency and parents for the purpose of determining a child's pendent educational placement.  In other words, qualifying agreements under the Act, 20 U.S.C. § 1415(j), are not restricted to agreements made by agents of local schools or state departments of education.  Thus, there is no extra-textual justification for reading into § 300.514(c) a second-tier-only, administrative finality, or state-*versus*-local rule.

The text of § 300.514(c) contains a simple disjunctive:  the decision of *either* a hearing officer in a due-process hearing conducted by the state educational agency *or* a decision by a state appellate review official in favor of the parents shall constitute an agreement between the state or local agency and the parents for determining the child's current educational placement.  Either type of decision qualifies under this language and there is no indication that an unfavorable second-tier decision vitiates the effect of a favorable first-tier decision.  Therefore, based on what we view to be the clear language of § 300.514(c) and the expressed intention for the rule, the IHO's decision in favor of L. B. resulting from the state-conducted first-tier due-process hearing constitutes an agreement by the state or local agency to L. B.'s placement at Summit Academy and locks that decision in place pending a final determination of the merits of the dispute.

Even if a first-tier due-process hearing in Indiana is not determined to be state-conducted, § 300.514(c) does not prohibit recognition of an IHO decision as a state or local agreement to a child's changed placement.  The IDEA clearly provides that state or local educational agencies

16

can agree to a child's changed current placement, 20 U.S.C. § 1415(j), and *Burlington* and other cases establish that decisions resulting from the administrative review process can constitute such agreements.  Implicit in Defendants' arguments is the assertion that § 300.514(c) is the exclusive means by which the results of administrative proceedings can qualify as state or local agreements.  Such an interpretation of the rule is unwarranted.  There is no exclusivity language in the text of § 300.514(c); the Supreme Court's decision in *Burlington* holding that administrative decisions can constitute agency agreements pre-dates the rule and was an interpretation of the IDEA itself, not the rule; and, as quoted above, the expressed intention underlying § 300.514(c) was to promulgate as regulations the prior judicial interpretations of the Act represented by *Burlington*, *Clovis*, and *Susquenita*.  As noted, these decisions do not include exclusivity language and the text of § 300.514(c) — and the asserted interpretations of the text incorporating requirements of finality and state decision-making — include limitations not found in the decisions.  Because the doctrine of *Burlington*, *Clovis*, and *Susquenita* is independent of 34 C.F.R. § 300.154(c), that rule cannot be interpreted to serve as the exclusive means by which administrative-review decisions may constitute state or local agreements to unilaterally-changed educational placements.

Based on the Act, 20 U.S.C. § 1415(j), and the principle enunciated in *Burlington*, it is reasonable to conclude that a locally-conducted first-tier hearing decision in favor of a child's unilaterally-changed current educational placement constitutes an agreement by the state or local agency to the changed placement.  The text of the Act, § 1415(j) allows that, during the pendency of administrative proceedings, an explicit, direct agreement by the authorities of a local school to a child's changed educational placement will have the effect of legally changing

the child's current placement for the purposes of the stay-put requirement, regardless of any contemporaneous or subsequent disagreement by the state educational agency or subsequent contrary decisions resulting from the first-tier due-process hearing or second-tier appellate review.  There is no allowance for the state agency or the state review officer to override the local agency's previous agreement to the change.  We discern no reason, and none was cited to us by the parties, that the same principle should not apply to a first-tier hearing decision in favor of a child's unilaterally-changed placement.  Therefore, we conclude that, pursuant to 20 U.S.C. § 1415(j) and 34 C.F.R. § 300.514(a), the IHO decision in favor of L. B.'s placement at Summit Academy constituted an agreement by the state or local agency to L. B.'s placement for the purposes of the stay-put requirements of the Act and regulation.

**511 IAC 7-30-3(v).**  Finally, and most persuasively, the Court concludes that neither the Act, 20 U.S.C. § 1514(j), nor the rule, 34 C.F.R. § 300.514(a) and (c), permits a rational interpretation that deprives the IHO decision of the status of an agreement when Indiana law expressly treats it as having such status.  Indiana's administrative rules implementing the IDEA provide, in part:

> If, as a result of the due process hearing, the independent hearing officer's decision concurs with the parents' contention that a change of placement is appropriate, the placement ordered by the independent hearing officer *shall be treated as a placement agreed upon by the parent and the public agency*.

511 IAC 7-30-3(v) (emphasis added).[9]  By this rule, Indiana's state and local educational agencies are legally bound to recognize IHO decisions that agree with parents' changed placements as agreements by the agency to the changed placements for the purposes of the

---

[9] Surprisingly, Defendants did not address this rule in their argument.

18

federal and state stay-put requirements, regardless of any mandate or allowances of federal

statute or rule.  Such an undertaking by a state trumps any administrative-finality and state-

*versus*-local interpretation as to the application of 34 C.F.R. § 300.514(c).  Even if § 300.514(c)

were considered as the otherwise-exclusive means by which administrative decisions would be

recognized as stay-put agreements, that exclusivity would certainly be subject to an exception for

provisions such as 511 IAC 7-30-3(v) because there would be no state interest in finality or state

control to which to defer, protect, or recognize.  Therefore, regardless of the interpretation of the

scope of 34 C.F.R. § 300.514(c), the effect of 511 IAC 7-30-3(v) renders the IHO's decision in

favor of L. B.'s placement at Summit Academy an agreement under 20 U.S.C. § 1415(j) by the

state or local educational agency to the placement for purposes of the stay-put requirements of

the IDEA, federal regulation, and state rule.

**Preliminary injunction hearing.**  The defendants contend that this court must apply the

equities-balancing standard for preliminary injunctions to the plaintiffs' motion, including

conducting a hearing.  However, because 20 U.S.C. § 1415(j) is an automatic statutory

requirement and there are no facts in dispute, the preliminary-injunction standards and

procedures do not apply, allowing a simple application of the statutory standard to the

undisputed facts.  *Rodiriecus v. Waukegan School District No. 60*, 90 F.3d 249, 253 (7th Cir.

1996); *Board of Education of Oak Park & River Forest High School District 200 v. Illinois State

Board of Education*, 79 F.3d 654, 657 (7th Cir. 1996).

## Conclusion and Order

The plaintiffs' motion is GRANTED.  Based on the IHO's decision in this case, which

constituted an agreement by the state or local educational agency to L. B.'s enrollment at Summit Academy for the 2005-2006 academic year, the Court finds and concludes that Summit Academy is L. B.'s current educational placement for the purposes of the stay-put requirements of federal and state law during the pendency of this judicial review and that Defendants are obligated, under the terms of 20 U.S.C. § 1415(j); 34 C.F.R. § 300.514(a) and (c); and 511 IAC 7-30-3(j) and (v), and are SO ORDERED, to continue the support for L. B.'s placement at Summit Academy as ordered in the IHO's decision.

SO ORDERED this 20th day of June, 2006.


_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Kyle A. Jones
Norris Choplin & Schroeder, L. L. P.
kjones@ncs-law.com

Sarah Steel Riordan
Bose McKinney & Evans, L. L. P.
sriordan@boselaw.com

Monica J. Conrad
Bose McKinney 7 Evans, L. L. P.
mconrad@boselaw.com